**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA

v.　　　　　　　　　　　　　　　　　　CASE NO: 8:04-CR-457-T-30EAJ
　　　　　　　　　　　　　　　　　　　Prior §2255 Civil Case No: 8:08-cv-563-T-30TBM
JUAN BAUTISTA LUGO,　　　　　　　　Present 11th Circuit Case No: 13-10692-A

　　　　Defendant.
_____/

## **ORDER ON REMAND**

THIS CAUSE comes before the Court upon the remand from the Eleventh Circuit, entered on June 7, 2013, for this Court to consider whether a certificate of appealability should issue. Lugo's present appeal is from this Court's denial of his motion of January 28, 2013, again requesting this Court to "revisit and reconsider his conviction and sentencing judgment." In that motion, Lugo raises the same issue previously addressed and denied by both this Court and the Eleventh Circuit. Upon review, this Court concludes that a certificate of appealability should not issue.

Since Lugo has raised the same issue multiple times, a brief discussion of the background is appropriate. Juan Lugo was convicted by a jury on March 28, 2005, and sentenced on July 13, 2005. Lugo appealed and his judgment and sentence was affirmed by the Eleventh Circuit on June 11, 2007.

On March 25, 2008, Lugo filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (CV Dkt. #1). Ground one of that motion was "Denial of

Effective Assistance of Counsel -- Failure to Communicate Government Rule 11 Plea Offer," the same ground raised multiple times since, including the present motion asking this Court to "revisit and reconsider" its previous denials.

This Court held an evidentiary hearing on September 15, 2008, and after hearing testimony from Lugo and trial counsel, made findings of fact on the record. Included in those findings was that trial counsel discussed the advantage of pleading guilty but Lugo did not want to plead guilty under any circumstances. This Court stated:

> So, I make a finding of fact that Mr. Lugo made a conscience (sic) and voluntary decision to go to trial and exercise his right to go to trial and that he did not want to plead guilty and he at no time was willing to cooperate.
>
> * * * *
>
> He was always adamant that he was not going to cooperate and I make a finding of fact that he was offended when someone suggested that he had cooperated with the government when he first got arrested. So I make a finding of fact that he would not have cooperated and would not have gotten the substantial assistance benefit because he never would have cooperated and that he voluntarily chose to go to trial and not plead guilty.
>
> * * * *
>
> I also make a finding of fact that on February 18th and February 25th of 2005, Mr. Espinosa-Montalban did discuss again with Mr. Lugo his options to plead guilty, and Mr. Lugo was adamant that he did not want to plead guilty and did not want to cooperate; and I find that before that on December 25, 2005 (sic), Mr. Lugo had a conversation with Mr. Espinosa-Montalban and again said at that time that he was still adamant he did not want to plead guilty or cooperate. For those reasons, I find factually that Mr. Lugo has not been prejudiced and deny the 2255 petition.

Transcript of evidentiary hearing, (Dkt. #27), pp. 87-89, case number 8:08-cv-563-T-30TBM.

On September 26, 2008, this Court denied Lugo's application for a certificate of appealability. On February 27, 2009, the Eleventh Circuit Court of Appeals granted Lugo a certificate of appealability on the following issues:

1.  whether Lugo established that his counsel was ineffective for failing to communicate a plea offer to him, and

2.  whether Lugo established that his counsel was ineffective for acting under a conflict of interest.

On October 19, 2009, the Eleventh Circuit affirmed this Court's Order denying Lugo's § 2255 motion (CV Dkt. #34); *Lugo v. United States*, 349 Fed. Appx. 484 (11th Cir. 2009) (unpublished). The Eleventh Circuit issued its mandate on December 14, 2009. (CV Dkt. #34).

Approximately one and a half years later, on June 23, 2011, Lugo filed with this Court a motion for relief from judgment (CV Dkt. #35). In his motion for relief, Lugo argued that this Court never resolved the issue of whether his trial counsel informed him of the government's plea offer. That motion was denied by this Court on March 27, 2012, because the motion was both untimely and baseless. The Court explained why the motion "seeking relief from final judgment" was untimely under Rule 60(b)(2) and (3), and also explained, again, that the Court had made a finding of fact that Lugo would have rejected any plea offer.

On April 9, 2012, Lugo filed a motion for reconsideration of the Order denying his motion for relief from judgment. That motion was denied by this Court on August 13,

2012 (CV Dkt. #38), with the Court explaining again that: "As stated on the record at the evidentiary hearing, the Court made a finding of fact that counsel told Defendant about the plea offer and Defendant chose to go to trial."

Lugo filed a Notice of Appeal. This Court construed the Notice of Appeal as an application for the issuance of a certificate of appealability, and denied it. (CV Dkt. #41). On November 9, 2012, the Eleventh Circuit dismissed the appeal for want of prosecution.

In furtherance of his never-say-die attitude, on January 28, 2013, Lugo filed a motion requesting this Court to "revisit and reconsider the conviction and sentencing judgment." On January 30, 2013, this Court entered an endorsed Order construing the motion as a successive § 2255 proceeding (since it attacked his judgment and sentence on the basis of ineffective assistance of counsel) and denied it. That motion raises the very same issue that has been extensively litigated previously.

Lugo apparently believes he is entitled to prevail because his trial counsel did not show him the actual written plea agreement before December 15, 2004, the deadline for acceptance contained in the government's December 3, 2004 cover letter.

Trial counsel was unable to meet with Lugo until December 21, 2004, in the Punta Gorda jail. In his motion, Lugo acknowledges that the government made no offer of a specific sentence in its written plea agreement. The only benefit he could have received would have been the three level reduction for acceptance of responsibility. Motion to Revisit and Reconsider (CR Dkt. #591), pp. 2-3. Lugo would have received the same three level reduction had he pled guilty without a written plea agreement. And, in any

event, Lugo made no showing that the government would not have extended the date for the signing of the plea agreement. Lugo's trial counsel testified:

BY MS. PELUSO:

Q  Mr. Espinosa-Montalban, when you agree that it's common - - well, at the time that you received the plea agreement or the plea agreement was sent to you in early December of 2004, the - - the trial was then set for December - - or for January? Do you recall that?

A  I don't recall (shaking head).

Q  And would you agree that it's common practice for the Government to give a deadline when there is a trial impending very soon - - to give a deadline to sign the plea agreement?

A  Correct.

Q  Would you also agree that it's not necessarily uncommon then if a trial gets continued for the Government to unofficially extend that time for entering or assigning a plea agreement?

A  Yes.

Q  So, in this case, the trial did not take place in January; correct?

A  Correct.

Q  So, when you went to visit your client on 12/21 of '04 at - - as noted in your log, you met with him for an hour - - or 1.3 hours; correct?

A  Yes.

Q  And you - - these entries that you make are just general entries of the substance of those discussions?

A  Yes.

Q	And would you agree that these small little entries couldn't anywhere near capture the detail of a discussion for 1.3 hours?

A	Correct.

Q	So, somewhere in there you interviewed with him. It says "Went OV/EV." Would that represent you went over evidence?

A	What page are you - -

Q	Looks like page 7, the entry for 12/21.

A	Yes.

Q	You see that?

A	Yes.

Q	Where you have "Trial Interview." You see that entry, "Punta Gorda"?

A	Yes.

Q	What is that second line at the end of it?

A	"Went over evidence, of FSGL." That stands for "Federal Sentencing Guidelines."

Q	Now, if you were going over the Federal Sentencing Guidelines with the client, would that be with regard to discussing his options?

A	Correct.

Q	And do you recall having the discussions of his options with the Defendant?

A	Yes.

Q	And would it have been at least during that time period when you mentioned the FSGL in your entry?

A    Right.

Q    And at that time, you would have had the plea agreement; right?

A    Yes.

Q    And would it have been that time when you would have discussed the difference between pleading guilty pursuant to the plea agreement versus straight up or going to trial?

A    At least that would have been the case, yes.

Q    When you responded to - - okay, go ahead.

A    At least once. I'm sure I brought that issue of pleading as opposed to going to trial in - - about the first meeting with him out of court.

Q    Now, you mentioned earlier that you didn't feel there was any difference with regard to what the plea agreement offered versus him pleading straight up. Can you explain that?

A    Correct. The - - plea agreement afforded by the Government did not offer Mr. Lugo anything different as far as benefits than what he otherwise would have been eligible for had he pled guilty without a plea agreement, and that would have been the three levels of acceptance of responsibility.

Q    And even - - and - - but the real difference would have been if he would have cooperated?

A    Correct.

Q    Then he would have gotten more than what he may have gotten from just pleading guilty straight up?

A    Correct.

Q    You - - you stated at some point that your client never expressed a willingness or a desire to cooperate with the Government?

A    Right.

Q   True?

A   Yes.

Q   Would that - - that, you would agree, is more than just accepting responsibility?

A   Right.

Q   And, in fact, in this case there were numerous defendants that were charged and pled guilty and, in fact, testified, i.e. cooperating with the Government in this case; right?

A   Yes.

Q   Would you agree that your client all along was well aware of the fact that several of his co-defendants, quote, unquote, cooperated with the Government?

A   Absolutely (nodding head).

Q   And yet he never expressed to you a desire to cooperate?

A   That's correct.

Q   Well, let's focus then - - well, let me ask one more question: Would you agree that he knew that these co-defendants, by cooperating with the Government, would probably get lesser sentences than he would?

A   Yes.

Q   If you could look at - - after that entry on 12/21 - - I believe it's entry - - right down below it, there's still an entry of 12/21 on your log. You said you have a phone conversation with AUSA Peluso?

A   Yes.

Q   And right after "Re: continue trial," you have "plea??"

> A    Right.
>
> Q    Do you recall what that would have referred to?
>
> A    I - - I don't recall if - - I really don't recall, but from making that entry on the first - - on the same day that I interviewed or met with Mr. Lugo in Punta - - in the Charlotte County jail, I probably called you from my cellphone from - - en route back from seeing him; and I really don't recall, but that indicates that at some point during my interview with Mr. Lugo the issue of a plea was again brought up.
>
> Q    Well, you would agree, would you not, with an outstanding plea agreement that I would have sent to you that I would have been curious as to whether he was to plea or sign the plea agreement?
>
> A    Correct.
>
> Q    So, the reference to that plea in discussion with me could possibly have indicated that you had communicated to me that your client was not interested?
>
> A    Correct.

(CV Dkt. #27, pp. 29-34).

Lugo's present motion fails to overcome the findings of fact of this Court. Lugo never expressed any interest in pleading guilty and would have rejected any offer to plead guilty. Each time the opportunity to enter a plea was discussed, he rejected it. He also rejected any overtures to cooperate with the government and claimed that he would not do so. Lugo has suffered no prejudice from his claim that his trial counsel failed to show him the written plea agreement.

Lugo has failed to demonstrate that a reasonable jurist would find this Court's assessment of his constitutional claims debatable or wrong. That is the standard he must

reach to be entitled to a certificate of appealability. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004), (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Having failed to meet this standard, the Court denies Lugo a certificate of appealability. And, because he is not entitled to a certificate of appealability, Lugo is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida on June 12, 2013.

/s/ James S. Moody, Jr.
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel/Parties of Record

*F:\Docs\2004\04-cr-457.Lugo 11th Circuit Remand.wpd*